# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# AT OWENSBORO

**DEVAN LAMONT PIERSON**                                                  **PLAINTIFF**

**v.**                                                  **CIVIL ACTION NO. 4:18-CV-P68-JHM**

**UNKNOWN NURSE "A"** *et al.*                                        **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This is a *pro se* prisoner civil rights action brought pursuant to 42 U.S.C. § 1983. This matter is before the Court for screening of the complaint pursuant to 28 U.S.C. § 1915A. For the reasons set forth below, the Court will dismiss certain claims, allow others to proceed, and provide Plaintiff the opportunity to amend his complaint.

## I. SUMMARY OF COMPLAINT

Plaintiff Devan Lamont Pierson, now a convicted prisoner, alleges that he was a federal pretrial detainee being housed at Grayson County Detention Center (GCDC) when the events set forth in the complaint occurred. He brings this action against nine Defendants in both their official and individual capacities – the United States Marshals Service (USMS), GCDC, GCDC Jailer Jason Woosley, GCDC Nurse Rita Wilson, GCDC "Unknown Officer VI," GCDC "Unknown Officer #2," GCDC "Unknown Nurse A," Twin Lakes Medical Center (TLMC) "Unknown Nurse I," and TLMC "Unknown Doctor AA."

Plaintiff first alleges that his rights were violated at GCDC because active and inactive gang members, including those of rival gangs, were housed together at GCDC. Plaintiff alleges that, as a result of this custom or policy, he was physically assaulted by an inmate from a rival gang on June 3, 2017. Plaintiff further alleges that this attack was the result of "forcing federal inmates to sleep on the floor due to the overcrowding of the facility." Plaintiff alleges that as a

result of this attack, "a portion of his right ear was severed by being bitten off, my right shoulder injured, front tooth chipped, right eye severely swollen and lacerated, and face swollen as a result from the numerous punches and kicks to the head I received . . . ."

Plaintiff then states that approximately five minutes after the emergency beacon was pressed, an officer responded to the disturbance and requested the assistance of additional officers. Plaintiff states that Defendant "Unknown Officer #2" then arrived. Plaintiff claims that Defendant "Unknown Officer #2" failed to protect him from injury because he "was assigned to the pod [where] the altercation took place, but was not at his assigned post to monitor inmates."

Plaintiff then alleges that, once he "arrived in medical," Defendant "Unknown Nurse A" "placed the severed portion of his ear in a small plastic cup and placed the cup in a small bag of ice. [She] then placed a gauze with tape around my bleeding. None of my other injuries were tended to, clearly violating my Eighth Amendment by not treating my serious medical needs adequately."

Plaintiff indicates that he was then transported to TLMC, "the designated hospital for treatment of inmates at Grayson County Detention Center." He continues: "Upon my arrival a cat-scan was performed to assure I had no bleeding in the brain or any other brain trauma. I was then placed in a room where I was handcuffed and shackled to a bed for approximately 2½-3 hours with nothing else done to the injuries." Plaintiff states that he complained to Defendants TLMC "Unknown Nurse I" and "Unknown Doctor AA" about "my ear hurting, my shoulder hurting, the blood dripping from my ear, and my head hurting. . . . I also made medical personnel aware of the fact that the ice that was preserving my ear had melted and needed to be changed in order to allow the possibility of such being re-attached." However, Plaintiff states that these two Defendants "refused to look at or even treat me for nearly 3 hours. As well as

refusing to place the bitten off portion of my ear in a solution in hopes of saving it." Plaintiff then writes that at approximately 3:00 a.m., Defendant "Unknown Doctor AA informed the transporting officers that the hospital could not handle my medical needs and recommended that I be transported to the University of Louisville Medical Center . . . ."

Plaintiff states that he was then transported back to GCDC, where he was "left in full restraints for approximately '40' minutes" while awaiting for the arrival of another officer to assist in transporting him to the University of Louisville Medical Center. Plaintiff alleges that, while he was waiting, he told Officer Pendelton that his head was hurting and that he felt like he was going to pass out. He states that he also requested a new gauze pad be placed on his ear and that the blood be cleaned off of his face so he could see. He states that he also asked for the severed portion of his ear "to be placed in some type of solution in hopes to have it sewed back on." Plaintiff asserts that Officer Pendelton then told him "That why happens you fight in my jail. You're not getting shit from anyone. Your ear is not your only loss."

Plaintiff alleges that he arrived at the University of Louisville Medical Center at "5:30 a.m. on June 4, 2017 (nearly 6 hours after the incident occurred)." Plaintiff states that the officer who had transported him gave the medical staff there the severed portion of his ear which was in a plastic bag in room temperature water. Plaintiff states that the medical staff told him that "there was nothing they could do to save my ear, and if I wanted to look normal again I would need plastic surgery in the future." He writes that they then put 30 stitches in his ear and disposed of the severed portion of his ear. Plaintiff states that he was then prescribed two medications and discharged.

Plaintiff states that upon his return to GCDC, he was placed in segregation. He states that although he originally thought he was being placed in segregation for a 72-hour "medical

3

watch," he was told that he was in disciplinary segregation for fighting with another inmate. Plaintiff indicates that his placement in disciplinary segregation violated his rights because he never received a disciplinary report or a hearing. Plaintiff then writes: "I was so emotionally distraut due to my current confinement that I asked to speak to someone from psychology. After several attempts to get the attention of someone from psychology, I became so emotionally distrust that I began to deficate on the interior of my cell." Plaintiff states that he was then placed in a restraint chair "for approximately 30 hours . . . during which time I was not fed." Plaintiff states that when he continued to request to speak to "someone from psychology," the nurse at GCDC informed him that "[GCDC] does not have a psychology department, nor do they have an onsite psychologist." Plaintiff states that she also told him that if he needed any mental health treatment, GCDC would have to call an outside specialist and that his "issue" was not serious enough to require such. Plaintiff states that he was placed back on suicide watch for 72 hours and that then placed in disciplinary segregation for nine days.

Plaintiff also claims that GCDC required him to pay a co-pay for the medications prescribed to him by the University of Louisville Medical Center. He states that Defendant GCDC Nurse Rita Wilson explained to him that this was because "the meds belonged to [GCDC]." Plaintiff also states that he asked Defendant Wilson for "preventative shots in case the assailant had any diseases" and that she told him they were not necessary, but that she would have blood work performed.

As relief, Plaintiff seeks compensatory and punitive damages and injunctive relief.

## II. LEGAL STANDARD

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the complaint, or any

4

portion of it, if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* § 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

Although this Court recognizes that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), "[o]ur duty to be 'less stringent' with pro se complaints does not require us to conjure up unpled allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted). And this Court is not required to create a

claim for Plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the Court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the dist rict court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III. ANALYSIS

"Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere." *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). Two elements are required to state a claim under § 1983. *Gomez v. Toledo*, 446 U.S. 635 (1980). "[A] plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "Absent either element, a section 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

### A. Defendant USMS

Although it is not entirely clear from the complaint, it appears that Plaintiff is suing the USMS because it allowed him, as a federal pretrial detainee, to be housed at a county jail where he was allegedly attacked by a rival gang member.[1] However, as an agency of the United States, the USMS is immune from suit. "[S]overeign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994); *see also Matthew v. Yellowstone Cty.,* No. CV 16-00002-BLG-SPW-TJC, 2017 U.S. Dist. LEXIS 53264, at *7 (D.C. Mont. Feb. 15, 2017) (dismissing claim against against USMS because, as a federal agency, it is not subject

---

[1] Because the USMS is a federal agency, § 1983 is not applicable to Plaintiff's claims against it.

6

to suit for damages under *Bivens*); *Mabie v. Kyle*, No. 16-cv-0060-NJR, 2016 U.S. Dist. LEXIS 128909, at *8 (S.D. Ill. Sept. 21, 2016) (same) (citing *FDIC v. Meyer*, 510 U.S. at 486 (1994)). Thus, the Court will dismiss the USMS this action for failure to state a claim upon which relief may be granted.

### B. The Twin Lake Medical Center Defendants

On preliminary review of the complaint, it is unclear whether Defendants TLMC "Unknown Nurse I" and TLMC "Unknown Doctor AA" are state actors. Therefore, upon consideration of the allegations against them, the Court will allow Fourteenth Amendment claims of deliberate indifference to a serious medical need to proceed against them. The Court also liberally construes Plaintiff's allegations in the complaint as asserting a medical malpractice claim and will allow that claim to proceed against these Defendants as well.

### C. The Grayson County Defendants

#### 1. Deliberate Indifference Claims

While the Eighth Amendment provides an inmate the right to be free from cruel and unusual punishment, it is the Due Process Clause of the Fourteenth Amendment that provides the same protections to pretrial detainees. *Richmond v. Huq*, 885 F.3d 928, 937 (6th Cir. 2018) (citing *Richko v. Wayne Cty.*, 819 F. 3d 907, 915 (6th Cir. 2016)). "The Sixth Circuit has historically analyzed Fourteenth Amendment pretrial detainee claims and Eighth Amendment prisoner claims 'under the same rubric.'" *Id.* (quoting *Villegas v. Metro Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013)). Indeed, at this time, the only explicit exception in the Sixth Circuit to the general rule that rights under the Eighth Amendment are co-extensive with rights under the Fourteenth Amendment pertains to excessive-force claims brought by pretrial detainees. *Id.* at 938 n. 3 (recognizing that *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015),

abrogated the subjective intent requirement for Fourteenth Amendment excessive-force claims and that the standard which governs pretrial detainee claims may be shifting, but declining to apply the *Kingsley* standard to a pretrial detainee deliberate indifference to a serious medical need claim); *see also Walker v. Miller*, No. 18-3209, 2018 U.S. App. LEXIS 29348 (6th Cir. Oct. 17, 2018) (continuing to apply the traditional standard to a deliberate indifference to a serious medical need claim brought by a pretrial detainee).

### a. Failure-to-Protect Claims

The Court construes Plaintiff's complaint as bringing Fourteenth Amendment failure-to-protect claims against Defendant GCDC, all GCDC Defendants in their official capacities, and GCDC Jailer Woosley and GCDC "Unknown Officer 2" in their individual capacities.

Defendant GCDC is not an entity subject to suit under § 1983. *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). Rather, the claims against it are actually against Grayson County as the real party in interest. *Id*. ("Since the Police Department is not an entity which may be sued, Jefferson County is the proper party to address the allegations of Matthews's complaint."). In addition, "official-capacity suits. . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.,* 436 U.S. 658, 691 n.55 (1978)). Thus, Plaintiff's official-capacity claims against the GCDC Defendants are actually against their employer, which is Grayson County. *See, e.g.*, *Lambert v. Hartman*, 517 F.3d 433, 440 (6th Cir. 2008) (stating that civil rights suit against county clerk of courts in his official capacity was equivalent of suing clerk's employer, the county).

When a § 1983 claim is made against a municipality, this Court must analyze two distinct issues: (1) whether Plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Deaton v. Montgomery Cty., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994) (quoting *Polk Cty. v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)).

Based upon the allegations contained in the complaint, the Court will allow a Fourteenth Amendment failure-to-protect claim to proceed against Grayson County and GCDC Jailer Woosley and GCDC "Unknown Officer 2" in their individual capacities.

### b. Deliberate Indifference to Serious Medical Need Claims

Plaintiff next seems to allege that certain GCDC Defendants were deliberately indifferent to his serious medical needs. The Court will analyze each of these claims in turn.

To establish an Eighth Amendment violation premised on inadequate medical care, a prisoner must demonstrate that the defendant acted, or failed to act, with "deliberate indifference to serious medical needs." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (quoting *Estelle v.*

9

*Gamble*, 429 U.S. 97, 104 (1976)); *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834 (6th Cir. 2002). "'Deliberate indifference' by prison officials to an inmate's serious medical needs constitutes 'unnecessary and wanton infliction of pain' in violation of the Eighth Amendment's prohibition against cruel and unusual punishment." *Miller v. Calhoun Cty.*, 408 F.3d 803, 812 (6th Cir. 2005) (quoting *Estelle v. Gamble*, 429 U.S. at 104). A claim of deliberate indifference under the Eighth Amendment has both an objective and a subjective component. The objective component requires the existence of a sufficiently serious medical need. *Turner v. City of Taylor*, 412 F.3d 629, 646 (6th Cir. 2005). To satisfy the subjective component, the defendant must possess a "sufficiently culpable state of mind," rising above negligence or even gross negligence and being "tantamount to intent to punish." *Horn v. Madison Cty. Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994). Put another way, "[a] prison official acts with deliberate indifference if he knows of a substantial risk to an inmate's health, yet recklessly disregards the risk by failing to take reasonable measures to abate it." *Taylor v. Boot*, 58 F. App'x 125, 126 (6th Cir. 2003) (citing *Farmer v. Brennan*, 511 U.S. at 832). Mere negligence will not suffice. *Farmer v. Brennan*, 511 U.S. at 835-36.

Plaintiff first alleges that, immediately after he was attacked, GCDC Defendant "Unknown Nurse A" "placed the severed portion of his ear in a small plastic cup and placed the cup in a small bag of ice [and] . . . then placed a gauze with tape around my bleeding." Plaintiff states, however, that this Defendant did not "tend" to any of his other injuries, which included a shoulder injury, a chipped tooth, and a severely swollen eye. The Court finds that these allegations fail to state a claim against GCDC Defendant "Unknown Nurse A" in her individual capacity. These allegations suggest that she acted reasonably when she treated Plaintiff's most severe injury in preparation for his transportation to the local medical center. Thus, the Court

10

will dismiss Plaintiff's individual-capacity claim against GCDC Defendant "Unknown Nurse A" for deliberate indifference to a serious medical need.

Plaintiff also alleges that another GCDC nurse, whom Plaintiff does not identify, was deliberately indifferent to his serious mental health needs. Plaintiff alleges that after he was told that he was being placed in disciplinary segregation, he made repeated requests to speak to someone in psychology and began defecating in his cell. He then alleges that an unidentified nurse told him that GCDC does not have an onsite psychologist and that his "issues" were not serious enough to warrant the calling of an offsite provider. Plaintiff alleges that he was then placed on "suicide watch" for 72 hours. Based upon these allegations, the Court can discern no cognizable constitutional claim against this unknown nurse. Thus, this claim will also be dismissed for failure to state a claim upon which relief may be granted.

Plaintiff also seems to claim that GCDC Defendant Nurse Wilson violated his rights when, after Plaintiff asked her for "preventative shots in case the assailant had any diseases," she told him that the shots were not necessary but that she would have blood work performed. The Court can discern no claim of a constitutional magnitude in this allegation either and, therefore, will dismiss Plaintiff's individual-capacity claim against Defendant Wilson for deliberate indifference to a serious medical need.

Finally, Plaintiff claims that GCDC violated his rights by requiring him to make a co-payment for the medications prescribed to him by the University of Louisville Medical Center. He states that Defendant GCDC Nurse Wilson explained to him that this was because "the meds belonged to [GCDC]." The Sixth Circuit has held that it is constitutional to charge inmates a small fee for health care where indigent inmates are guaranteed service regardless of ability to pay. *White v. Corr. Med. Servs.*, 94 F. App'x 262, 264 (6th Cir. 2004) (citing *Reynolds v.*

11

*Wagner*, 128 F.3d 166, 173-74 (3d Cir. 1997)). Thus, because Plaintiff does not claim that he was denied his prescribed medication because of an inability to pay for it, the Court will also dismiss this claim for failure to state a claim upon which relief may be granted. *See also Martin v. Bova*, No. 1:13-cv-02739, 2014 U.S. Dist. LEXIS 70392, at *8 (N.D. Ohio May 22, 2014) (dismissing claim based upon charging of a co-pay for medications for failure to state a claim upon which relief may be granted because the plaintiff did not allege he was denied medical care).

### 3. Due Process Claim

Plaintiff also asserts that his Fourteenth Amendment due process rights were violated when he was placed in disciplinary segregation upon his return from the University of Louisville Medical Center. He states that he was told that he was being placed in disciplinary segregation for fighting with another inmate but that he never received a disciplinary report or hearing.

A prisoner's ability to challenge a prison misconduct investigation and conviction depends on whether the actions implicated any liberty interest. In *Sandin v. Conner*, 515 U.S. 472 (1995), the Court set forth the standard for determining when a prisoner's loss of liberty implicates a federally cognizable liberty interest protected by the Due Process Clause. According to *Sandin*, a prisoner is entitled to the protections of due process only when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or "will inevitably affect the duration of his sentence." *Id.* at 487.

With regard to Plaintiff's claims based on his placement in disciplinary segregation, courts generally consider the nature and duration of a stay in segregation in determining whether it imposes an "atypical and significant hardship." *Harden-Bey v. Rutter*, 524 F.3d 789, 795-96

(6th Cir. 2008). The Sixth Circuit has held that mere placement in administrative segregation, and placement for a relatively short period of time, do not require the protections of due process. *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995) (holding 61 days in segregation is not atypical or significant).

Here, the complaint indicates that Plaintiff was placed in disciplinary segregation for approximately nine days. The Sixth Circuit jurisprudence cited above establishes that his placement fails to constitute an "atypical and significant" hardship warranting the protections of due process. *See also Dunbar v. Barone*, 487 F. App'x 721, 724-725 (3d Cir. 2012) (holding 18 months in segregation did not amount to atypical and significant hardship); *Smith v. Mensinger*, 293 F.3d 641, 654 (3d Cir. 2002) (holding seven months in disciplinary confinement did not implicate a protected liberty interest); *Griffin v. Vaughn*, 112 F.3d 703, 705-07 (3d Cir. 1997) (holding 15 months in segregation was not an atypical and significant hardship); *Ingersoll v. Phelps*, No. 17-cv-00046-NJR, 2017 U.S. Dist. LEXIS 17180, at *8-9 (S.D. Ill. Feb. 7, 2017) (finding three months in disciplinary segregation not sufficient to trigger due process protections). Accordingly, the Court will dismiss Plaintiff's Fourteenth Amendment due process claim for failure to state a claim upon which relief may be granted.

### 4. Remaining Defendant

"It is axiomatic that a complaint under 42 U.S.C. § 1983 must show a causal connection between the named defendants and the alleged constitutional deprivation[.]" *Cox v. Barksdale*, No. 86-5553, 1986 U.S. App. LEXIS 33615, at *1 (6th Cir. Nov. 13, 1986) (citing *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Dunn v. Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982). "Where a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the

complaint is properly dismissed, even under the liberal construction to be given pro se complaints." *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974); *see also LeMasters v. Fabian*, No. 09-702 DSD/AJB, 2009 WL 1405176, at *2 (D. Minn. May 18, 2009) ("To state an actionable civil rights claim against a government official or entity, a complaint must include specific factual allegations showing how that particular party's own *personal* acts or omissions directly caused a violation of the plaintiff's constitutional rights."). While the Court has a duty to construe *pro se* complaints liberally, Plaintiff is not absolved of his duty to comply with the Federal Rules of Civil Procedure by providing Defendants with "fair notice of the basis for [his] claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002). Federal Rule of Civil Procedure 8(a) requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"

Plaintiff only lists GCDC "Unknown Officer VI" as a defendant in the caption and parties section of the complaint form. Plaintiff does not state any allegations against him in the statement-of-claims section of the complaint or state how he was directly involved in any of the alleged wrongdoing. Plaintiff, therefore, fails to state a claim against Defendant GCDC "Unknown Officer VI," and he will be dismissed from this action.

### D. Amended Complaint

Finally, the Court will allow Plaintiff the opportunity to amend his complaint to avoid the dismissal of two additional claims he seems to make in his complaint. *See, e.g.*, *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013) ("Under Rule 15(a) a district court can allow a plaintiff to amend his complaint even when the complaint is subject to dismissal under the PLRA [Prison Litigation Reform Act].")

The first amendment will be allowed with regard to GCDC "Officer Pendelton." In the complaint, Plaintiff makes allegations which suggest that Officer Pendelton was deliberately indifferent to his serious medical needs. Plaintiff, however, has not named Officer Pendelton as a defendant in this action, and, therefore has failed to state a claim against him at this time. Thus, **if Plaintiff desires that his claim against Officer Pendelton proceed, he must name Officer Pendleton as a Defendant in an amended complaint and indicate the he is suing Officer Pendleton in his individual capacity**.

The Court will also allow Plaintiff to amend his complaint in relation to the allegations he makes about being placed in chair restraints and not being fed for 30 hours. **In order for claims based upon these allegations to proceed, Plaintiff must name as Defendants the GCDC officials who took these actions against him and sue them in their individual capacities.**

## VI. CONCLUSION

**The Clerk of Court is DIRECTED to substitute Grayson County for the GCDC as a Defendant in this action.**

For the foregoing reasons, **IT IS HEREBY ORDERED** that the claims against the **USMS, GCDC Defendant "Unknown Nurse A," GCDC Defendant Nurse Wilson,** and **GCDC "Unknown Officer VI"** are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted. The **Clerk of Court** is **DIRECTED** to **terminate these Defendants as parties to this action**.

**IT IS FURTHER ORDERED** that Plaintiff's claims based upon the requirement that he make a co-payment for his prescription medication and his placement in disciplinary segregation are also **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that within <ins>30 days</ins> from the entry date of this Memorandum Opinion and Order, Plaintiff may file an amended complaint in which he names Officer Pendleton as a Defendant, names as Defendants the GCDC officials who allegedly placed him in a restraint chair and refused to feed him for 30 hours, and sues these Defendants in their individual capacities.

**The Clerk of Court is DIRECTED** to send Plaintiff a *Pro Se* Prisoner Handbook and to place the instant case number and "Amended" on a § 1983 complaint form and send it, along with four blank summons forms, to Plaintiff for his use should he wish to amend the complaint. The Court will conduct an initial review on the amended complaint pursuant to 28 U.S.C. § 1915A.

The Court will enter a Service and Scheduling Order to govern the development of the continuing claims after review of the amended complaint or, if none is filed, after the time in which to file such has expired.

The Court passes no judgment on the merit of the claims it has allowed to proceed or on the ultimate outcome of this action.

Date: November 8, 2018

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

cc: Plaintiff, *pro se*
    Defendants
    Grayson County Attorney
4414.011