UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

**DEVAN LAMONT PIERSON**                                                                                          **PLAINTIFF**

**v.**                                                                          **CIVIL ACTION NO. 4:18-CV-P68-JHM**

**GRAYSON COUNTY DETENTION CENTER** *et al.*                                     **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

Defendant Jordan Mudd, RN, by counsel, filed a motion for partial summary judgment regarding Plaintiff Devan Lamont Pierson's 42 U.S.C. § 1983 claim (DN 42) and a motion for summary judgment regarding Plaintiff's remaining medical-malpractice claim (DN 49). Plaintiff did not file a response to either motion. The Court, therefore, by Order entered September 10, 2020, directed Plaintiff to file a response to each motion within 30 days and provided him with guidance on responding to a motion for summary judgment (DN 67). Plaintiff has not filed a response, and the time to do so has passed. Accordingly, this matter is ripe for review, and for the reasons that follow, the motions for summary judgment will be granted.

**I. BACKGROUND AND SUMMARY OF CLAIMS**

Plaintiff, now a convicted prisoner, alleged that he was a federal pretrial detainee being housed at Grayson County Detention Center (GCDC) when the events set forth in the complaint occurred. Plaintiff sued, among other Defendants, Jordan Mudd, a nurse at Twin Lakes Medical Center (TLMC)[1] in his official and individual capacities. In the complaint (DN 1), the allegations pertinent to the claims asserted against Defendant Mudd are as follows.

---

[1] In the complaint, Plaintiff sued "Unknown Nurse I" (DN 1). The Court subsequently granted (DN 29) Plaintiff's motion to amend identifying that unknown nurse as Defendant Mudd (DN 19).

Plaintiff alleged that he was physically assaulted by an inmate from a rival gang on June 3, 2017, and that as a result of the assault, "a portion of his right ear was severed by being bitten off, my right shoulder injured, front tooth chipped, right eye severely swollen and lacerated, and face swollen as a result from the numerous punches and kicks to the head I received . . . ." Plaintiff then alleged that, once he "arrived in medical," a nurse "placed the severed portion of his ear in a small plastic cup and placed the cup in a small bag of ice. [She] then placed a gauze with tape around my bleeding. None of my other injuries were tended to[.]"

Plaintiff indicated that he was then transported to TLMC, "the designated hospital for treatment of inmates at Grayson County Detention Center." He continued: "Upon my arrival a cat-scan was performed to assure I had no bleeding in the brain or any other brain trauma. I was then placed in a room where I was handcuffed and shackled to a bed for approximately 2½-3 hours with nothing else done to the injuries." Plaintiff stated that he complained to Defendants Nurse Mudd and Dr. Thomas about "my ear hurting, my shoulder hurting, the blood dripping from my ear, and my head hurting. . . . I also made medical personnel aware of the fact that the ice that was preserving my ear had melted and needed to be changed in order to allow the possibility of such being re-attached." Plaintiff contended that these two Defendants "refused to look at or even treat me for nearly 3 hours. As well as refusing to place the bitten off portion of my ear in a solution in hopes of saving it." Then, according to Plaintiff, at approximately 3:00 a.m., Defendant Dr. Thomas "informed the transporting officers that the hospital could not handle my medical needs and recommended that I be transported to the University of Louisville Medical Center . . . ."

Plaintiff reported that he was transported back to GCDC, where he was "left in full restraints for approximately '40' minutes" while awaiting for the arrival of another officer to

assist in transporting him to the University of Louisville Medical Center. Plaintiff alleged that, while he was waiting, he told Officer Pendelton that his head was hurting and that he felt like he was going to pass out; that he requested a new gauze pad be placed on his ear and that the blood be cleaned off of his face so he could see; and that he also asked for the severed portion of his ear "to be placed in some type of solution in hopes to have it sewed back on." Plaintiff asserted that Officer Pendelton then told him, "That why happens you fight in my jail. You're not getting shit from anyone. Your ear is not your only loss."

Plaintiff alleged that he arrived at the University of Louisville Medical Center at "5:30 a.m. on June 4, 2017 (nearly 6 hours after the incident occurred)." Plaintiff indicated that the officer who had transported him gave the medical staff there the severed portion of his ear which was in a plastic bag in room temperature water. Plaintiff alleged that the medical staff told him that "there was nothing they could do to save my ear, and if I wanted to look normal again I would need plastic surgery in the future." He indicates that they then put 30 stitches in his ear and disposed of the severed portion of his ear. Plaintiff states that he was then prescribed two medications and discharged.

On initial review of the complaint pursuant to 28 U.S.C. § 1915A, the Court noted that it was unclear whether the TLMC Defendants were state actors but allowed the Fourteenth Amendment claims of deliberate indifference to a serious medical need and a state-law medical malpractice claim to proceed against them for further development.

## II. STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.

P. 56(a). The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The moving party's burden may be discharged by demonstrating that there is an absence of evidence to support an essential element of the nonmoving party's case for which he has the burden of proof. *Id.* Once the moving party demonstrates this lack of evidence, the burden passes to the nonmoving party to establish, after an adequate opportunity for discovery, the existence of a disputed factual element essential to his case with respect to which he bears the burden of proof. *Id.* If the record taken as a whole could not lead the trier of fact to find for the nonmoving party, the motion for summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Where the nonmoving party bears the burden of proof at trial, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F. Supp. 214, 217 (E.D. Mich. 1990).

"The fact that the non-moving party does not respond, or that the motion may otherwise seem to be unopposed, does not change this requirement or lessen the burden on the moving party or the court." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 410 (6th Cir. 1992) (citing *Carver v. Bunch*, 946 F.2d 451 (6th Cir. 1991)). "In the absence of a response, the court must review carefully those portions of the submitted evidence designated by the moving party." *Id.* "Neither the trial nor appellate court, however, will *sua sponte* comb the record from the partisan perspective of an advocate for the non-moving party." *Id.* "Rather, in the reasoned

4

exercise of its judgment the court may rely on the moving party's unrebutted recitation of the evidence, or pertinent portions thereof, in reaching a conclusion that certain evidence and inferences from evidence demonstrate facts which are 'uncontroverted.'" *Id.*

### III. ANALYSIS

In his motions for summary judgment, Defendant Mudd asserts the following facts, supported by medical records.

> Jordan Mudd was the nurse assigned to triage patients as they arrived to the emergency department on the evening of June 3, 2017. Jordan Mudd completed and documented his triage assessment of the patient. Jordan Mudd's involvement was limited to that.
>
> Plaintiff arrived at Twin Lakes' Emergency Department on June 3, 2017 at 23:27. See, DN 42-2. Defendant, Jordan Mudd, RN, completed a triage assessment at 23:43. See, DN 42-3. Plaintiff alleges, incorrectly, that he did not receive any additional treatment and was transported to University of Louisville Medical Center for further treatment. Plaintiff underwent two CT scans and he received antibiotic ointment. Plaintiff's CT scan of the brain was normal and revealed no fracture or hemorrhage. See, DN 42-4. The radiologist dictated his report at 00:48 on June 4, 2017. The Plaintiff also underwent a CT of the Facial Bones. That revealed facial swelling, no facial fractures, and no evidence of intraorbital hematoma. See, DN 42-5. The radiologist dictated that report at 01:47. It was determined that the Plaintiff needed specialist treatment from an ear, nose, and throat specialist (ENT), a service not available at Twin Lakes, thereby necessitating transfer to University of Louisville Hospital. University of Louisville accepted the transfer request by phone at 02:15. See, DN 42-6. The Plaintiff subsequently left Twin Lakes in the custody of the Grayson County Detention Center employees at 03:05. See, DN 42-2.

(DNs 42 and 49).

**A. Motion for partial summary judgment regarding the § 1983 claim** (DN 42)

"Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere." *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). Two elements are required to state a claim under § 1983. *Gomez v. Toledo*, 446 U.S. 635 (1980). "[A] plaintiff must allege the violation of a right secured by the

5

Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "Absent either element, a section 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

A private entity, like TLMC, or a private individual, like Defendant Nurse Mudd acting on his own, cannot deprive a citizen of his or her constitutional rights. *See Lansing v. City of Memphis*, 202 F.3d 821, 828 (6th Cir. 2000) (citing *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149 (1978)); *Hudgens v. NLRB*, 424 U.S. 507 (1976)). Section 1983 does not create a cause of action against a private actor "'no matter how discriminatory or wrongful' the party's conduct." *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999)). Courts employ three tests to determine whether the challenged conduct is fairly attributable to the state: (1) the public function test, (2) the state compulsion test, and (3) the symbiotic relationship or nexus test.

The public function test requires that the private entity exercise powers which are traditionally exclusively reserved to the state. The state compulsion test requires that a state exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state. Finally, under the symbiotic relationship test, the action of a private party constitutes state action when there is a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself. *Collyer v. Darling*, 98 F.3d 211, 232 (6th Cir. 1996) (citing, *inter alia, Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)).

Defendant Mudd argues that the § 1983 claim fails because at no point did he act under the color of state or federal law in his actions. He asserts that he was employed by TLMC, a private, nonprofit corporation whose conduct is not attributable to the state. To support his motion, Defendant Mudd attaches an affidavit of Wayne Meriwether, Chief Executive Officer of Grayson County Hospital Foundation, Inc., (GCHF) d/b/a Twin Lakes Regional Medical Center. (DN 42-7). Meriwether avers that GCHF "is, and was at all time relevant to this action, a private corporation licensed and registered in the Commonwealth of Kentucky"; "is a non-profit corporation organized under 26 U.S.C. § 501(c)(3)"; and "is, and was at all times relevant to this action, only operating as a corporation in the Commonwealth of Kentucky" (*Id.*). Meriwether further avers that, at all times relevant to this action, neither GCHF nor its employee Defendant Mudd was "an agent of the federal, state, or local government." (*Id.*). Defendant Mudd further argues that at no point were his actions fairly attributable to the state under any of the three tests.

The Court finds that Defendant Mudd has demonstrated an absence of evidence to support an essential element—state action—of Plaintiff's § 1983 claim. Plaintiff fails to come back and provide proof that the actions of TLMC or its employee, Defendant Mudd, were fairly attributable to the state. The provision of medical services is not a power that has been exclusively reserved to the state. Moreover, there is no allegation here that Defendant Mudd was compelled to work for the state or that a symbiotic relationship existed between him and the state. Even if Defendant Mudd was paid from public resources for his services to the incarcerated Plaintiff, these allegations are insufficient to render him a state actor for purposes of § 1983. *See Rendell-Baker v. Kohn*, 457 U.S. 830, 840 (1982) (finding nonprofit, privately operated school's receipt of public funds did not make its employee discharge decisions acts of state subject to suit under federal statute governing civil action for deprivation of rights); *Adams*

7

*v. Vandemark*, 855 F.2d 312, 315-16 (6th Cir. 1988) (indicating that fact that nonprofit corporation was funded almost entirely by public sources, and was subject to state regulation, without more, is insufficient to make private entity's decision to discharge employees attributable to state for purpose of § 1983 action); *Ketola v. Clearwater*, No. 1:08-CV-31, 2008 WL 4820499, at *3 (W.D. Mich. Oct. 31, 2008) (holding that even if the defendant hospital and its physician "treated [the prisoner plaintiff] at the state's request and expense, they did not thereby become state actors"). In addition, the fact that Defendant Mudd may have been subject to state licensing requirements does not make him a state actor under the nexus test. *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006) (allegation that hospital and social worker were subject to state licensing was insufficient to support finding that defendants were acting under color of state law).

For these reasons, the Court concludes that there is no genuine issue of material fact regarding Defendant Mudd's lack of state action for purposes of a § 1983 claim. *See Raper v. Cotroneo*, No. 1:17-CV-368, 2017 WL 4173507, at *3 (W.D. Mich. Sept. 21, 2017) (holding that a private physician who performed surgery on the prisoner plaintiff at an offsite hospital was not state actor for all of the above reasons). The Court, therefore, will grant Defendant Mudd's motion for partial summary judgment (DN 42) as to the § 1983 claim.

**B. Motion for summary judgment as to the medical-malpractice claim** (DN 49)

Plaintiff asserts a claim of medical malpractice against Defendant Mudd. Defendant Mudd seeks summary judgment on this claim arguing that there is no proof in the record to support the allegation that he breached the applicable standard of care or the duty owed to Plaintiff and that Plaintiff has admitted, in responses to an interrogatory and requests for admissions, that he does not have the required expert proof.

Under Kentucky law, "[e]xcept in limited factual circumstances, . . . the plaintiff in a medical negligence case is required to present expert testimony that establishes (1) the standard of skill expected of a reasonably competent medical practitioner and (2) that the alleged negligence proximately caused the injury." *Andrew v. Begley*, 203 S.W.3d 165, 170 (Ky. Ct. App. 2006). "Kentucky consistently recognizes two exceptions to the expert witness rule in medical malpractices cases." *Id.* (citing *Perkins v. Hausladen*, 828 S.W.2d 652, 655 (Ky. 1992)). "Both exceptions involve the application of the *res ipsa loquitur* doctrine and permit the inference of negligence even in the absence of expert testimony." *Id.*

> One exception involves a situation in which "'any layman is competent to pass judgment and conclude from common experience that such things do not happen if there has been proper skill and care'; illustrated by cases where the surgeon leaves a foreign object in the body or removes or injures an inappropriate part of the anatomy. The second occurs when 'medical experts may provide a sufficient foundation for *res ipsa loquitur* on more complex matters.'" An example of the second exception would be the case in which the defendant doctor makes admissions of a technical character from which one could infer that he or she acted negligently.

*White v. Norton Healthcare, Inc.*, 435 S.W.3d 68, 76-77 (Ky. Ct. App. 2014) (quoting *Andrew v. Begley*, 203 S.W.3d at 170-71) (internal citations omitted).

Here, the Court finds that neither exception applies to the expert witness requirement. As to the first exception, whether Defendant Mudd's evaluation of Plaintiff's injuries from the assault was proper and in accordance with accepted standards of medical care is beyond the everyday knowledge of laypersons. As to the second exception, Plaintiff fails to provide evidence from which any inference of negligence by Defendant Mudd could be inferred.

Because Plaintiff fails to produce an expert witness in support of his medical-malpractice claim, he has failed to create a genuine dispute of material fact as to Defendant Mudd's duty of

care and breach thereof. Defendant Mudd, therefore, is entitled to summary judgment on this claim as well.

## IV.  ORDER

For the foregoing reasons,

**IT IS ORDERED** that Defendant Mudd's motion for partial summary judgment regarding Plaintiff's § 1983 claim (DN 42) and motion for summary judgment regarding Plaintiff's medical-malpractice claim (DN 49) are **GRANTED**. Defendant Mudd is entitled to judgment as a matter of law on the claims against him.

The **Clerk of Court is DIRECTED to terminate Defendant Mudd** as a party to this action.

Date: November 23, 2020

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc:     Plaintiff, *pro se*
        Counsel of record
4414.005